1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF OREGON

9

10  BAODING TIANWEI GROUP CO.,      )
    LTD., a foreign entity,         )
11                                  )      No.  CV 07-862-HU
                    Plaintiff,      )
12                                  )
         v.                         )      OPINION AND
13                                  )           ORDER
    PACIFICORP, an Oregon           )
14  corporation,                    )
                                    )
15                  Defendant.      )
                                    )
16  PACIFICORP, an Oregon           )
    corporation,                    )
17                                  )
         Third Party Plaintiff,     )
18                                  )
         v.                         )
19                                  )
    WINBO INTERNATIONAL             )
20  CORPORATION, a California       )
    corporation, and SUPER          )
21  POWER EQUIPMENT CO., a          )
    California corporation,         )
22                                  )
         Third Party Defendant.     )
23                                  )
    SUPER POWER EQUIPMENT CO.,      )
24  WINBO INTERNATIONAL             )
    CORPORATION,                    )
25                                  )
         Counterclaimants,          )
26                                  )
         v.                         )
27

28  OPINION AND ORDER Page 1

1  BAODING TIANWEI GROUP CO.,        )
                                     )
2        Counter Defendant.          )
   ══════════════════════════════════)
3
   Renee R. Stineman
4  John R. Barhoum
   Kjersten H. Turpen
5  Dunn Carney Allen Higgins & Tongue
   851 S.W. Sixth Avenue, Suite 1500
6  Portland, Oregon 97204
         Attorneys for Baoding Tianwei Group
7
   Thomas R. Johnson
8  Nicholle Y. Winters
   Perkins Coie
9  1120 N.W. Couch Street, Tenth Floor
   Portland, Oregon 97209
10       Attorneys for Pacificorp

11 R. Scott Douglas
   David Ismay
12 Farella Braun + Martel
   235 Montgomery Street, 17th Floor
13 San Francisco, California 94104

14 Angela M. Otto
   Stewart Sokol & Gray
15 2300 S.W. First Avenue, Suite 200
   Portland, Oregon 97201
16       Attorneys for Winbo International, Super Power Equipment

17 HUBEL, Magistrate Judge:

18       The matters before the court are Pacificorp's motion for

19 summary judgment (doc. # 49) and the motion by Super Power

20 Equipment Company (Super Power) to stay and to compel arbitration

21 (doc. # 44). Winbo International Corporation (Winbo International)

22 joins in Super Power's motion (doc. # 84).

23                    **Factual Background**

24       On August 16, 2001, Winbo International and Baoding Tianwei

25 Group (Baoding or BTW) entered into an agency agreement under which

26 Winbo International was to be the exclusive agent for Baoding in

27

28 Opinion and Order page 2

1 the United States for the supply and sale of electrical

2 transformers manufactured by Baoding. Declaration of Thomas R.

3 Johnson (Johnson Declaration), Exhibit 3; Declaration of Lucy Ni

4 (L. Ni Declaration), ¶ 2. On or about the same day, Winbo

5 International and Baoding entered into a Cooperation Agreement on

6 Phase Modulation Transformer ("cooperation agreement") which

7 provided that Winbo International would transfer certain technology

8 to Baoding for the design and manufacture of phase transformers in

9 exchange for an agency fee in connection with all sales of such

10 transformers outside China. Johnson Declaration Exhibit 4; L. Ni

11 Declaration ¶ 3.

12     On December 3, 2001, Pacificorp executed a Letter of Intent to

13 purchase one transformer from Winbo International, for its Dave

14 Johnston Plant. Johnson Declaration, Exhibit 6. The purchase of the

15 transformer for the Dave Johnston plant was formalized in Purchase

16 Contract No. 4500122784 (Johnston Contract). The Johnston Contract

17 was executed by Pacificorp on November 12, 2002, and by Winbo

18 International on behalf of itself and Baoding on November 27, 2002.

19 Johnson Declaration, Exhibit 10, p. 9.

20     On March 29, 2002, Baoding and Winbo International entered

21 into an agreement supplementing the cooperation agreement and the

22 agency agreement (the supplementary agreement), under which it was

23 agreed that if Baoding sold its products directly or indirectly in

24 Winbo International's region without Winbo International's consent,

25 Baoding would be deemed in breach of the contract and would pay a

26 fine of 25% of the total amount of the contract. Johnson

27

28 Opinion and Order page 3

Declaration, Exhibit 5; L. Ni Declaration ¶ 3. The supplementary agreement states that it "shall be a part of the original Agreements and shall be of equal legal effect as the original Agreements." The supplementary agreement also provides:

> In the event of changes in the Companies of both Parties (such as changes to the name or nature of the Company), the foregoing Agreements and this Supplementary Agreement shall automatically be binding upon the new Company without separate execution.

Johnson Declaration, Exhibit 5 ¶¶ 4, 5. The supplementary agreement provides that disputes unresolved through consultations are to be referred to the Chinese International Economic and Trade Arbitration Commission, and that the agreement is governed by Chinese law. Id. at ¶ 2.

On July 3, 2002, Baoding executed a Letter of Authorization, addressed to Pacificorp, confirming Winbo International as its exclusive agent. Johnson Declaration, Exhibit 2; Amabile Declaration, Exhibit A.

On July 6, 2002, Winbo International and Baoding executed an agreement relating to the Johnston contract, under which Baoding agreed that it would not communicate directly with Pacificorp on commercial issues, and that it would receive payment from Winbo International within 75 days of Winbo International's receipt of payment from Pacificorp. Johnson Declaration, Exhibit 7. Pacificorp received a copy of this agreement. Amabile Declaration ¶ 4.

On October 16, 2002, Pacificorp issued a purchase order for two phase angle transformers for its Monument substation from Winbo International. Johnson Declaration, Exhibit 8. The purchase of the

Opinion and Order page 4

transformers for the Monument substation was formalized in Purchase Contract No. 3000016931 (the Monument contract). The Monument contract was executed by Pacificorp on October 28, 2002, and by Winbo International on behalf of itself and Baoding on November 27, 2002, the same day it executed the Johnston contract. Johnson Declaration, Exhibit 11, p. 10.

On December 12, 2002, Winbo International and Baoding executed an agreement relating to the Monument contract, under which Baoding agreed that it would not communicate directly with Pacificorp on commercial issues, and that it would receive payment from Winbo International within 15 days of Winbo International's receipt of payment from Pacificorp. Johnson Declaration, Exhibit 9. The record does not reveal whether Pacificorp received a copy of this agreement.

The Johnston contract and the Monument contract (collectively called the purchase contracts) designated both Winbo International and Baoding as "Seller." Johnson Declaration, Exhibits 10 and 11 (purchase contracts). However, Winbo International conducted all negotiations for the sale of the transformers to Pacificorp. Baoding was not involved in the contract negotiations. L. Ni Declaration ¶¶ 4, 8, 10. Baoding acknowledges that all negotiations were conducted by Winbo International, on its behalf. Plaintiff's Response to Pacificorp's CSF ¶ 17.

The purchase contracts by their terms do not separate the rights and obligations of Baoding and Winbo International, including the right to receive payment from Pacificorp. Baoding

Opinion and Order page 5

issued invoices directly to Winbo International and received payments from Winbo International related to the purchase contracts. Johnson Declaration, Exhibit 15 (sample invoices from Baoding to Winbo International and payments from Winbo International to Baoding); Plaintiff's Response to Pacificorp's CSF ¶ 18.

All invoices provided to Pacificorp for the purchase contracts were issued by Winbo International. Baoding never invoiced Pacificorp for the purchase contracts. L. Ni Declaration, ¶ 12; Declaration of Karen Amabile ¶ 5; Johnson Declaration, Exhibit 13 (invoices to Pacificorp); Johnson Declaration, Exhibit 14 (plaintiff's response to defendant's first request for admissions No. 4 and 5). Through email correspondence, Baoding instructed Pacificorp to contact Winbo International directly about payments. Johnson Declaration, Exhibit 16 (June 13, 2003 email from Baoding to Pacificorp).

Pacificorp asserts, and Baoding does not deny, that it was understood by all parties to the purchase contracts that Pacificorp would remit payment to Winbo International and Winbo International would remit payment to Baoding. L. Ni Declaration ¶ 7; Johnson Declaration Exhibits 7 and 9 (July 2002 and December 2002 contracts); Amabile Declaration, Exhibit B (July 2002 contract); Plaintiff's Response to Pacificorp's CSF ¶ 20.

The Johnston contract had a price increase, and later a price decrease, both of which were negotiated between Pacificorp and Winbo International. L. Ni Declaration ¶¶ 8, 9. According to the

Opinion and Order page 6

1  Supplemental Declaration of Lucy Ni, after delivery of the
2  transformer purchased by Pacificorp under the Johnston contract,
3  Pacificorp complained of errors and delays. Supplemental L. Ni
4  Declaration ¶ 6. Lucy Ni states that "Winbo/Super Power acted as
5  Baoding's agent in negotiating the resolution of Pacificorp's
6  complaints," id., and kept Baoding informed of the status of the
7  negotiations. Id. These negotiations ultimately resulted in an
8  offset to the final contract price. Id.

9      The purchase contracts required the issuance of letters of
10 credit by "Seller" to warrant the products. The letters of credit
11 were negotiated and issued by Winbo International. Ni Declaration,
12 ¶¶ 8, 10, 11; Johnson Declaration, Exhibit 12 (letters of credit);
13 Plaintiff's Response to Pacificorp's CSF ¶ 20, 16.

14     In August 2003, Winbo International notified Pacificorp that
15 it had changed its name to Super Power. On August 28, 2003,
16 Pacificorp sent a letter to Diana Ni requesting written
17 acknowledgment from her of the company's name change from Winbo
18 International to Super Power for Pacificorp's records. Pacificorp
19 also asked that, pursuant to Article 14, "Assignment," of the
20 purchase contracts, its letter serve as an amendment to the
21 purchase contracts reflecting the change in the name of the seller.
22 Johnson Declaration, Exhibit 1. Baoding denies that the purchase
23 contracts were amended to reflect the name change. Plaintiff's
24 Response to Pacificorp's CSF ¶ 23.

25     Pacificorp remitted payments to Winbo International and,
26 later, to Super Power under the purchase contracts. See Johnson
27
28 Opinion and Order page 7

1  Declaration, Exhibit 13 (some invoices requesting payment to Bank
2  of America Standby Letter of Credit Department account of Winbo
3  International and some requesting payment to the same account with
4  Super Power shown as the beneficiary). The final payment was made
5  on or about March 3, 2004. Amabile Declaration ¶ 6, Exhibit C
6  (spreadsheet detailing payments made by Pacificorp, first to Winbo
7  International and then to Super Power); L. Ni Declaration ¶ 3;
8  Johnson Declaration, Exhibit 17 (bank statements and cancelled
9  checks reflecting payments from Pacificorp to Winbo International
10 and to Super Power). Pacificorp asserts that no monies are due and
11 owing by Pacificorp under the purchase contracts, because it paid
12 in full the amounts owed under the Monument contract and the
13 reduced price as negotiated for the Johnson contract. L. Ni
14 Declaration ¶ 13; Amabile Declaration ¶ 10. Baoding does not deny
15 that Pacificorp paid in full the amounts negotiated under the
16 Monument and Johnston contracts, but denies that Baoding received
17 all the monies to which it was entitled under the purchase
18 contracts because Pacificorp made some payments to Super Power,
19 rather than Winbo International, citing Johnson Declaration,
20 Exhibit 17 (showing some payments to Winbo International and some
21 payments to Super Power). See Plaintiff's Response to Pacificorp's
22 CSF ¶ 21.

23     On September 11, 2005, Baoding sent an email to Pacificorp
24 notifying Pacificorp that it had revoked Winbo International's
25 agency authorization. Johnson Declaration, Exhibit 18. The email
26 states that as a result of the revocation,

27

28 Opinion and Order page 8

1  Winbo is no longer qualified to bid, sign purchase
2  orders, receive payment, and/or perform under the
   pertinent contracts in the name of [Baoding.] Therefore,
3  [Baoding] would certainly wish to settle any amounts
   outstanding by Pacificorp to [Baoding] for the Purchase
4  Orders in the payment issues between Pacificorp and
   [Baoding].

5  Id.

6                              **Standard**

7      A party is entitled to summary judgment if the "pleadings,

8  depositions, answers to interrogatories, and admissions on file,

9  together with affidavits, if any, show there is no genuine issue as

10 to any material fact." Fed. R. Civ. P. 56 (c). Summary judgment is

11 not proper if material factual issues exist for trial. Warren v.

12 City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). A genuine

13 dispute arises "if the evidence is such that a reasonable jury

14 could return a verdict for the nonmoving party." State of

15 California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). Where

16 the record taken as a whole could not lead a rational trier of fact

17 to find for the non-moving party, there is no genuine issue for

18 trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

19 574, 587 (1986).

20     On a motion for summary judgment, the court must view the

21 evidence in the light most favorable to the non-movant and must

22 draw all reasonable inferences in the non-movant's favor. Clicks

23 Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir.

24 2001). The court may not make credibility determinations or weigh

25 the evidence. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-55

26 (1990).

27

28 Opinion and Order page 9

1                              **Discussion**

2    A.    Pacificorp's Motion for Summary Judgment

3          Pacificorp's  motion  for  summary  judgment  rests  on  an

4    assumption,  not  undisputed,  that  Winbo  International  and  Super

5    Power  are  the  same  entity  with  different  names.  On  the  basis  of

6    this  assumption,  Pacificorp  argues  that  its  payment  to  Super  Power

7    constituted  payment  to  Baoding,  under  the  rule  of  agency  that

8    payment  to  an  agent  authorized  to  receive  it  is  payment  to  the

9    disclosed  principal.  See  Alderman v. Davidson,  954 P.2d 779, 783

10   (Or. 1998).

11         Pacificorp  argues  that  the  agreements  and  related  documents

12   show  that  Baoding  granted  Winbo  International/Super  Power  express

13   authority  over  the  transactions  involving  the  sale  of  the

14   transformers,  including  the  receipt  of  payment,  through  the  agency

15   agreement,  the  cooperation  agreement,  and  the  supplementary

16   agreement.  The  course  of  conduct  of  Baoding  was  consistent

17   throughout  with  the  agreements:  Baoding  never  directly  negotiated

18   or executed a contract with Pacificorp, Baoding expressly conferred

19   authority  on  its  agent  to  handle  the  collection  of  payments,  and

20   Baoding  expressly  agreed  not  to  communicate  with  Pacificorp  on

21   commercial matters.

22         Pacificorp  argues  that  accordingly,  no  issue  of  fact  remains

23   to be resolved, and Pacificorp is entitled to summary judgment that

24   it has met its obligations to Baoding by making payment in full to

25   Super Power.

26   ///

27

28   Opinion and Order page 10

1    As an alternative to the agency theory, Pacificorp argues that
2  Winbo International/Super Power and Baoding are joint obligees
3  under the purchase contracts, with identical pecuniary interests.
4  The contracts do not create separate obligations between them, and
5  in fact establish that the obligation owed by Pacificorp is payment
6  to the "Seller," identified as Baoding and "Super Power."
7  Pacificorp argues that Baoding and "Super Power" jointly held the
8  right to payment, so that payment to one satisfied the obligation
9  of payment to the other.[1]

10    Baoding responds that Pacificorp is not entitled to summary
11  judgment because Super Power and Winbo International are separate
12  entities, Baoding never had an agency agreement with Super Power,
13  and Super Power is a stranger to the purchase contracts. In support
14  of this argument, Baoding proffers online records from the
15  Corporations Division for the California Secretary of State showing
16  that Super Power and Winbo International have been assigned
17  different corporate registration numbers. Declaration of John R.
18  Barhoum ¶ 2, Exhibit 1. According to the Barhoum Declaration,
19  Baoding made a request to the California Corporations Division for
20  "all documents evidencing or relating to any name change by Super
21  Power," and received nothing, but the record of a name change from
22  Winbo USA Group to Super Power. Barhoum Declaration, ¶¶ 3, 4;
23  Exhibit 3 (amendment to articles of incorporation for Winbo USA

24
25    [1]Although there were letters and emails between Pacificorp
26  and Super Power indicating an intention to amend the purchase
    contracts to reflect that Winbo International was now named Super
27  Power, the record does not contain executed amended contracts.
28  Opinion and Order page 11

Group changing the name of the corporation to Super Power Equipment Co.).[2] The record before the court does not explain the relationship, if any, among Winbo USA Group, Winbo International, and Super Power, although I note that exhibits to the Supplemental Johnson Declaration indicate that both Lucy Ni and Diana Ni received emails at "winbo.us" Declarations from Lucy Ni state that she was employed by Winbo International and is now employed by Super Power. Consequently, an email address for Lucy Ni at "winbo.us" suggests, at the very least, that Winbo International, Winbo US and Super Power had some employees in common.

The Barhoum Declaration states further that "this office" (i.e., the law firm of Dunn Carney) has not seen any documents indicating that Super Power and Baoding were parties to any agency agreement or other contract, and that it "expect[s] the evidence will show that Baoding and Super Power had no relationship, agency or otherwise." Id. at ¶ 6. The Barhoum Declaration also states that "[w]e expect the evidence will show that Baoding never received notice of the purported name change." Id. at ¶ 7.

///

---

[2] Also attached to the Barhoum Declaration, as Exhibit 1, is a printout from the California Corporations Division showing Winbo International Corporation as a "suspended" corporation and Super Power Equipment Co. as an "active" corporation. Winbo International's corporate registration shows an address of 5700 Stoneridge Mall Road #325, Pleasanton, California and Chao Wen Ni as its designated agent for service of process, at the same address. Super Power's corporate registration shows an address of 5882 Turnberry Drive, Dublin California and Lucy Ni as its designated agent for service of process, at 7062 Briza Loop in San Ramon, California. Id.

1    On the basis of the circumstantial evidence from the
2  California Corporations Division and anticipated evidence--or lack
3  of evidence--Baoding argues that 1) Pacificorp made at least some
4  of its payments to the wrong entity, Super Power, a stranger to the
5  contracts; 2) there is a genuine issue of material fact as to
6  whether Pacificorp knew or should have known that Super Power would
7  not tender Pacificorp's payments to Baoding; and 3) that in any
8  event, Pacificorp "admits" that it did not make full payment under
9  the purchase contracts, because the price reduction on the Johnston
10 contract was negotiated with Super Power, which did not have
11 authority from Baoding to reduce the price.

12        1.   <u>Has Baoding generated a genuine issue of material
               fact on whether Winbo International and Super Power
13             are separate entities?</u>

14    The issue is whether non-movant Baoding has met its burden on
15 summary judgment of proffering evidence sufficient to create a
16 genuine issue of material fact on its claim that Winbo
17 International and Super Power are not the same entity. The evidence
18 from the California Corporations Division is somewhat probative
19 that they are not, and all reasonable inferences from this evidence
20 must be drawn in Baoding's favor. The only other evidence Baoding
21 has proffered is the Declaration of Xia Wei. This declaration is
22 not sworn or made under penalty of perjury. It is signed, not by
23 the declarant, but on behalf of Baoding. See Declaration of Xia
24 Wei, p. 2. The declaration states that Xia Wei is the vice general
25 manager of Baoding, and that Baoding "did not consent to, nor have
26 any knowledge of, Pacificorp's alleged payments to" Super Power.
27
28 Opinion and Order page 13

1  <u>Id.</u> at ¶ 2. The declaration states further that Baoding and Super

2  Power have "never been parties to an agency agreement or other

3  contract," that Baoding "does not have a relationship with Super

4  Power, contractual or otherwise," and that to Xia Wei's knowledge,

5  "Baoding never received notice from Winbo that it purportedly

6  changed its name to Super Power." <u>Id.</u> at ¶¶ 3, 4. Xia Wei's

7  knowledge is not necessarily co-extensive with Baoding's knowledge

8  and imputed knowledge. Xia Wei's declaration states that Winbo did

9  not have authority from Baoding to accept less than full payment

10 under the purchase contracts.

11     Pacificorp challenges the admissibility of Wei's declaration

12 in its brief. See Pacificorp Reply Memorandum, p. 4, n. 5. I find

13 it unnecessary to consider this challenge, because regardless of

14 whether the Xia Wei declaration is admissible, the statements made

15 do not create a genuine issue of material fact about whether Winbo

16 International is or is not Super Power under another name.

17          2.   <u>Has Baoding generated a genuine issue of material</u>
                 <u>fact as to whether Pacificorp knew or should have</u>
18               <u>known that Super Power would not tender</u>
                 <u>Pacificorp's payments to Baoding?</u>
19

20     Baoding relies on Pacificorp's ability to access the

21 California corporation records, had it wanted to, to support

22 Baoding's argument that Pacificorp knew or should have known that

23 Winbo International and Super Power were different entities. To

24 support this argument, Baoding relies on two pieces of

25 correspondence between Pacificorp and Super Power discussing the

26 name change, neither of which indicates a copy to Baoding.

27 ///

28 Opinion and Order page 14

1    One is an email dated July 22, 2003 from Lucy Ni to John
2    Guerin of Pacificorp, copied to Diana Ni and discussing the name
3    change. The email states that Winbo International is changing its
4    name to Super Power. Barhoum Declaration, Exhibit 3. The second
5    piece of evidence is a letter from Pacificorp to Super Power on
6    August 28, 2003, acknowledging the name change, which similarly
7    does not indicate that Baoding was copied.

8    I am unpersuaded by Baoding's argument that the absence of any
9    indication that Baoding was copied on this correspondence
10   necessarily creates an inference that 1) Baoding was unaware of the
11   purported name change; and 2) Pacificorp knew Baoding was unaware.
12   Such an inference is further weakened by the evidence discussed
13   above that, subsequent to the events giving rise to this action,
14   Baoding received payments from Super Power and entered into
15   contracts with Super Power. Johnson Declaration, Exhibit 15 (Bank
16   of America transfer of $477,090 from Super Power to Baoding);
17   Supplemental Johnson Declaration, Exhibit 1 (email dated September
18   30, 2003 from Lucy Ni to "Kevin" at Baoding stating that she has
19   read a draft contract between Baoding and Super Power, adding some
20   changes, and attaching the contract signed by Super Power).

21   Super Power's briefing materials for its motion to compel
22   arbitration contain another piece of evidence which creates the
23   inference that Baoding knew Winbo International had become Super
24   Power. Those materials contain a Declaration of Lucy Ni which
25   states that Lucy Ni notified Baoding of the name change from Winbo
26   to Super Power. Declaration of Lucy Ni in Further Support of Third

27
28   Opinion and Order page 15

1  Party Defendant Super Power Equipment Co.'s Petition to Compel
2  Arbitration ¶ 6 and Exhibit A (email in Chinese); Declaration of
3  Pei Ling Haussecker, Exhibit C (English translation of Ni email in
4  Chinese).

5      According to this declaration, as Assistant General Manager at
6  Winbo International Corp., Lucy Ni was personally involved in the
7  "designation of Super Power to carry on Winbo's ongoing transformer
8  sales operations." Ni Declaration ¶ 3. She states that "Super Power
9  is [a] closely held corporation wholly owned and operated by the
10 owners, officers, and managers of Winbo, another closely held
11 corporation, and conducts its transformer sales operations with the
12 same employees as did Winbo." Id.

13     According to Ms. Ni, in mid-2003, the owners, officers and
14 managers of Winbo International "decided to conduct their ongoing
15 transformer sales operations under the Super Power name," id. at ¶
16 5, and that on or about June 9, 2003, she sent via fax to Baoding
17 "a written notice of Winbo's intention to perform its transformer
18 sales operations pursuant the [sic] Winbo-Baoding Agreements under
19 the Super Power name." Id. at ¶ 6. The Chinese copy of that notice
20 is attached to her declaration as Exhibit A. She states that she
21 "understand[s] that an English translation of this notice has been
22 prepared and is being filed herewith." Id. The English translation
23 of the notice is attached to the Declaration of Pei Ling
24 Haussecker, submitted with the motion to compel arbitration. The
25 translation is as follows:

26 ///
27

28 Opinion and Order page 16

Dear Director Tang, how are you?

To better serve our customers and develop international market more broadly, our company's name will be changed to Super Power Equipment Company to deal with our existing customers and potential new customers and to provide our services according to the "Agency Agreement," "Cooperation Agreement," and "Supplementary Agreement."

Winbo International Corporation

Haussecker Declaration, Exhibit B.

Ms. Ni states that after about June 2003, Super Power "assumed the duties and obligations of Winbo arising from and related to the Winbo-Baoding agreements," including 1) maintaining an office in the United States for Baoding; 2) promoting Baoding's transformer products; 3) assisting Baoding in collecting payments from transformer purchasers; and 4) remitting payments directly to Baoding. Ni Declaration at ¶ 8. Attached to the Ni Declaration as Exhibit C is the Funds Transfer Request that Super Power sent to Baoding in connection with a $477,090 USD payment that Super Power made to Baoding. Id. at ¶ 8.[3] Ms. Ni states that except in connection with this litigation, to her knowledge, "Baoding never communicated to Winbo or Super Power any objection to Super Power's assumption of Winbo's duties, obligations, and performance under the Winbo-Baoding Agreements." Id. at ¶ 9.

Baoding's evidence is not sufficient to create a genuine issue of material fact from which a reasonable jury could find that Baoding was unaware Winbo International was doing business as Super Power, and that Pacificorp knew or should have known Baoding was

---

[3] This is the same document discussed above, Exhibit 15, p. 3 of the Johnson Declaration.

Opinion and Order page 17

1  unaware and therefore should have made contract payments directly

2  to Baoding rather than to Super Power.

3      I turn now to Baoding's argument that, even assuming Super

4  Power is a successor entity to Winbo International, Pacificorp

5  knew, or should have known, that Baoding could not collect payment

6  against a mere successor entity because the general rule in Oregon

7  is that when one corporation purchases all of the assets of another

8  corporation, the purchasing corporation does not become liable for

9  the debts and liabilities of the selling corporation, citing <u>Tyree</u>

10 <u>Oil, Inc. v. BOLI</u>, 168 Or. App. 278, 282 (2000). I do not find this

11 argument persuasive because there is no evidence in the record on

12 whether there was an asset purchase, an assignment of rights, or

13 simply a name change. The lack of evidence about what kind of

14 transaction occurred casts doubt on the applicability of this case.

15 Absent evidence of an asset purchase known to Pacificorp, the

16 theory leads nowhere.

17     In any event, regardless of what kind of transaction occurred,

18 there is no dispute that Winbo International had express authority

19 from Baoding to act as its general agent, and express authority,

20 through the supplementary agreement, to change its "name or nature"

21 and be bound by the terms of the agreements between Winbo

22 International and Baoding. There is no evidence that Baoding ever

23 sent an invoice to Pacificorp or otherwise directed Pacificorp to

24 send its payments to Baoding.

25         3.   <u>Has Baoding generated a genuine issue of fact on</u>
             <u>the issue of whether Pacificorp made full payment</u>
26           <u>under the purchase contracts?</u>

27

28 Opinion and Order page 18

1    Baoding asserts that there is a genuine issue of fact as to
2  whether Pacificorp discharged its entire obligation under the
3  purchase contracts, because Pacificorp's payment to Super Power was
4  only partial. Pacificorp counters that Baoding does not even
5  explain, much less offer evidence proving, its claim that
6  Pacificorp's payment was partial.

7    The evidence before the court shows that the initial price
8  under the Johnston contract was $1,235,000. L. Ni Declaration ¶ 8.
9  The price was later increased through negotiations by Winbo
10 International and Pacificorp to $1,403,370, _id._, and then reduced
11 to $1,170,036 after negotiations with Pacificorp subsequent to
12 delivery of the transformers, when Pacificorp complained of delays
13 and errors. _Id._ at ¶¶ 8, 9; Johnson Supp. Declaration, Exhibit 2
14 (purchase order printout from Pacificorp procurement department
15 reflecting price increase as of January 17, 2003).

16   Winbo International had express authority from Baoding to
17 communicate with Pacificorp on commercial matters, to negotiate the
18 purchase contracts and to receive payments from Pacificorp. There
19 is no evidence in the record that this express authority was
20 revoked until September 11, 2005, after Pacificorp had made its
21 last payment under the purchase contracts. Moreover, Pacificorp has
22 proffered evidence that Baoding was aware of the price reduction on
23 the Johnston purchase and had worked with Winbo International to
24 address Pacificorp's complaints and reach a resolution. Ni
25 Supplemental Declaration ¶ 6; Johnson Supplemental Declaration,
26 Exhibits 3 (email from Winbo International to Baoding), 4 (email

27

28 Opinion and Order page 19

string between Baoding and Winbo International about Pacificorp's complaints), 5 (explanation from Baoding for errors complained of by Pacificorp), and 6 (email string involving Pacificorp and Winbo International dealing with price adjustments). All of this evidence establishes that Pacificorp reasonably believed that Winbo International/Super Power had authority to negotiate the price to be paid by Pacificorp, and that Pacificorp paid the price so negotiated.

Baoding has not generated a genuine issue of material fact with respect to its claim that Pacificorp's payments under the purchase contracts were incomplete.

I conclude that Baoding has not met its burden of showing the existence of a genuine issue of material fact, such that a reasonable jury could conclude that 1) Pacificorp knew or should have known that it should not make payments to Super Power; or 2) that Pacificorp failed to make all payments due under the purchase contracts. Pacificorp is entitled to summary judgment in its favor.

B.    Super Power and Winbo International's Motion to Stay and to Compel Arbitration

Super Power and Winbo International move the court for an order compelling Baoding to arbitrate the disputes between them in accordance with the arbitration clause contained in the supplementary agreement, which provides:

> Any dispute arising between the parties shall be resolved through consultations in the first instance. If no agreement is reached through consultations, such dispute shall be referred to the Chinese International Economic and Trade Arbitration Commission for arbitration. The Agreement shall be governed by Chinese laws.

Opinion and Order page 20

1  Johnson Declaration, Exhibit 5.

2       The strong federal policy in favor of arbitration applies with

3  equal force to international contracts. See, e.g., Schenk v.

4  Alberto-Culver Co., 417 U.S. 506, 519-20 (1974). The policy is

5  manifested by Congress's adoption of the Convention on Recognition

6  and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208.

7       Baoding's opposition to the motion to compel arbitration is

8  premised on its argument that Super Power is a stranger to the

9  contracts because it is the successor to Winbo USA, not Winbo

10 International, based on the records from the California

11 Corporations Division. Baoding contends that it was unaware of the

12 name change and the fact that Super Power was receiving money from

13 Pacificorp under the purchase contracts.

14      The record does not support this argument, because it shows

15 that Baoding was informed of the name change and received payments

16 under the purchase contracts from Super Power. See Declaration of

17 L. Ni in Further Support of Third Party Defendant's Petition to

18 Compel Arbitration ¶¶ 6, 8, Exhibits A and C, Haussecker

19 Declaration, Exhibit B.

20      Baoding asserts that Super Power has not provided any

21 documentation or evidence proving that it is the same entity as

22 Winbo International and therefore that Super Power is not a party

23 to the agreements between Winbo International and Baoding.

24 According to the Declaration of Renee Stineman, even counsel for

25 Super Power and Winbo International have agreed that Winbo

26 International and Super Power are not the same corporate entity,

27

28 Opinion and Order page 21

1  and that there has been no assignment of the agreements. Stineman

2  Declaration ¶ 4.

3      I find this argument unpersuasive for two reasons. First, the

4  language of the supplementary agreement does not require that Winbo

5  International remain the same corporate entity as Super Power or

6  assign the contract to a separate corporate entity. The

7  supplementary agreement expressly permits Winbo International to

8  change its "name or nature," and still "automatically" bind the new

9  company to the agency agreement, the cooperation agreement, and the

10 supplementary agreement, "without separate execution." Johnson

11 Declaration, Exhibit 5.

12     Second, Winbo International has joined in the motion to stay

13 and to compel arbitration. There is no doubt that Winbo

14 International is both a party to the arbitration agreement and a

15 party to this lawsuit, and therefore has standing to petition for

16 enforcement of the arbitration provision.

17     Super Power makes a number of arguments that under general

18 contract and agency principles, a nonsignatory may enforce an

19 arbitration agreement against a signatory under different theories,

20 including 1) equitable estoppel; 2) a sufficiently close

21 relationship between the signatory and nonsignatory; 3) the

22 existence of an agency relationship between the signatory and the

23 nonsignatory. See, e.g., <u>Comer v. Micro, Inc.</u>, 436 F.3d 1098 (9th

24 Cir. 2006)(equitable estoppel); <u>C.D. Partners LLC v. Grizzle</u>, 424

25 F.3d 795 (8th Cir. 2005)(close relationship between signatory and

26 non-signatory and agency relationship). The record does not raise

27

28 Opinion and Order page 22

1  a material issue of fact on the question of whether Superpower is
2  the same entity as Winbo International, nor does the supplementary
3  agreement require Winbo International to refrain from changing its
4  "name or nature." The language of the supplementary agreement makes
5  it unnecessary to reach this argument.

6      As an alternative to its argument that Super Power is not a
7  party to the arbitration agreement, Baoding asserts that if the
8  court should find the claims asserted by Baoding against Super
9  Power are subject to arbitration, the court should not order
10 arbitration in China, citing Bauhinia Corp. v. China Natal Mach. &
11 Equip. Imp. & Exp. Corp., 819 F.2d 247, 250 (9th Cir. 1987)("In
12 absence of a term specifying location, a district court can only
13 order arbitration within its district.") Baoding points out that
14 the arbitration clause at issue states that the dispute is to be
15 referred to an arbitration service, the Chinese International
16 Economic and Trade Arbitration Commission (CIETAC), but nowhere
17 identifies a forum for arbitration.

18     In response to this argument, Super Power asserts that an
19 arbitration clause specifying a particular organization to
20 administer the arbitration is treated as an exclusive forum
21 selection clause, and the arbitration must be held before that
22 administrator. Super Power cites In re Salomon, Inc., 68 F.3d 554,
23 557-58 (2d Cir. 1995).

24     In Salomon, the Second Circuit joined two of its sister
25 circuits in holding that designation of a particular arbitrator can
26 also constitute a forum selection clause. See also Luckie v. Smith

27

28 Opinion and Order page 23

1  Barney, Harris Upham & Co., 999 F.2d 509 (11th Cir. 1993)(per
2  curiam); Roney & Co. v. Goren, 875 F.2d 1218 (6th Cir. 1989)(all
3  involving arbitration of securities cases before self-regulatory
4  associations such as the New York Stock Exchange pursuant to the
5  AAA). Super Power argues that the court need only compel
6  arbitration and refer the current disputes to CIETAC, arguing that
7  as a practical matter, such an order could be the equivalent of
8  ordering arbitration in China. Super Power has attached CIETAC's
9  arbitration rules, which provide that arbitrations are to be
10 conducted in either Beijing or Shanghai, and asks that the court
11 take judicial notice of the rules under Rule 201 of the Federal
12 Rules of Evidence.

13      Super Power cites to the Convention on Recognition and
14 Enforcement of Foreign Arbitral Awards, under which courts are
15 authorized to compel arbitration in China and elsewhere. 9 U.S.C.
16 § 206 ("A court having jurisdiction under this chapter [9 U.S.C. §§
17 201-208] may direct that arbitration be held in accordance with the
18 agreement at any place therein provided for, whether that place is
19 within or without the United States,"); see also Jain v. Deere, 51
20 F.3d 686, 690 (7th Cir. 1995).

21      Super Power also distinguishes Bauhinia, the case relied on by
22 Baoding, because the arbitration clause in Bauhinia specified no
23 location for arbitration and specified no rules under which the
24 arbitration was to proceed. 819 F.2d at 248. In contrast, Super
25 Power argues, the arbitration clause in this case provides for
26 arbitration before CIETAC, which does specify the rules under which

27

28 Opinion and Order page 24

the arbitration is to proceed.

I conclude that it is unnecessary for me to take judicial notice of CIETAC's rules and order arbitration in China. Although the Salomon case involved arbitration under the FAA, I am persuaded by the Salomon court's analysis to the extent of concluding that an agreement to arbitrate before a particular arbitrator avoids the ambiguity as to forum and rules found in the Bauhinia case, and can also constitute a forum selection clause. Accordingly, the motion by Super Power and Winbo International to stay and to compel arbitration before CIETAC, pursuant to the terms of the arbitration provision of the supplementary agreement, is granted.

**Conclusion**

Pacificorp's motion for summary judgment (doc. # 49) is GRANTED. The motion by Super Power to stay and to compel arbitration (doc. # 44), joined by Winbo International (doc. # 84) is GRANTED.

IT IS SO ORDERED.


Dated this 10th day of September, 2008.


　　　　　　　　　　　　 /s/ Dennis James Hubel

　　　　　　　　　　　　 Dennis James Hubel
　　　　　　　　　　 United States Magistrate Judge

Opinion and Order page 25